OPINION OF THE COURT
Catherine Cholakis, J.
Defendant is charged by misdemeanor information dated December 8, 2014 with one count of criminal contempt in the second degree under Penal Law § 215.50 (3). Defendant has filed a notice of motion with a supporting affirmation dated February 10, 2015. The People filed an affirmation in opposition dated March 6, 2015.
Motion to Preclude
Defendant seeks to preclude the People from offering evidence of any statements made by defendant to a public servant. The application is based upon the absence of notice, pursuant to CPL 710.30, of the People’s intent to offer such evidence. In their affirmation in opposition to the motion, the People note their lack of knowledge of any statement made by defendant to a public servant. Accordingly, this application is denied as academic.
Defendant also moves to preclude identification testimony due to lack of CPL 710.30 notice. As this case involves criminal conduct allegedly committed by defendant against his child’s mother, however, it is reasonable to infer that identification is not at issue. This application is therefore also denied as academic.
Motion for Brady Material
Defendant makes numerous specific demands for exculpatory material. The People acknowledge their continuing duty to promptly disclose to the defense any and all such material. The *776 court notes defendant’s demands and the People’s response, and is confident that the People will discharge their legal and ethical obligations in this regard.
Motion for Sandoval and Ventimiglia Hearings
These applications are granted. The hearings will be held immediately before trial. The People shall provide defendant reasonable notice in advance of the Sandoval hearing of the specific criminal convictions or other bad acts which they intend to use as impeachment material. Additionally, should the People seek to use any prior uncharged acts as evidence on their case-in-chief (see generally People v Molineux, 168 NY 264 [1901]), they shall provide the court and defense counsel with at least three days’ advance notice.
Motion to Dismiss for Facial Insufficiency
The misdemeanor complaint in this case states, in its factual portion:
“At the aforementioned time, date and location above named defendant did intentionally disobey a lawful mandate when he went to the apartment of [I. B.], where your defendant is mandated to stay away from her and proceeded to have a verbal argument with her. Stay away order of protection was issued from Waterford Town Court issued [sic] on 12/13/12 and expires 12/13/17.”
The supporting deposition states:
“Today at about 2:10 pm [K. C.] was dropping off my son [M. C.] when [M’s] father Joshua Cook came into my house and started yelling about my ex-boyfriend. He threatened to call the law guardian on me and that he would flip my house upside down if he finds out my ex-boyfriend was here. I have a stay away order of protection against Joshua.”
The order of protection referred to requires defendant to stay away from the person, the home, the school, the business and the place of employment of the complainant. The order also contains, in a section entitled, “Specify other conditions defendant must observe for the purposes of protection,” the following language: “No contact directly or indirectly except as allowed by family court order.” It appears that a copy of this order of protection was provided to the defense as part of the accusatory instrument, as counsel not only refers to its specific *777 language but also appends a copy as an exhibit to his motion papers.*
Defendant challenges the facial sufficiency of the accusatory instrument on a number of grounds. Three of these may be disposed of easily. One will require extensive discussion, as it raises an issue of first impression.
Defendant contends that the accusatory instrument lacks a nonhearsay factual allegation that he knew of the existence of the order of protection. The order states, however, “Defendant advised in Court of issuance and contents of Order.” It also states, “Order personally served on Defendant in Court.” In addition, the signature “Joshua Cook” appears on the line labeled “Defendant’s signature.” From all this, it may reasonably be inferred that defendant was aware of the order and had knowledge of its contents. Moreover, the order signed by defendant would be admissible in evidence through two separate exceptions to the hearsay rule. It is both an admission of defendant and a business record of the issuing court. As such, it would satisfy the pleading requirements of the CPL (see People v Casey, 95 NY2d 354, 361-362 [2000]).
Defendant also contends, citing People v Griffin (10 Misc 3d 626, 627 [Crim Ct, NY County 2005]), that a legally sufficient accusatory instrument alleging criminal contempt must contain a certified copy of the order in question. The Court of Appeals, however, while noting that attaching a copy of the order would be “the far better practice” (People v Casey at 359), held that the accusatory instrument is not per se defective because it does not include the order at all. Nothing in Casey or in any other binding authority requires that a copy of an order appended to an accusatory instrument needs to be certified. Accordingly, this argument is without merit.
Defendant also argues that the accusatory instrument lacks any factual allegation of intent to violate the order. He contends that the statements and actions described in the supporting deposition “were motivated solely out of concern for his son, and the environment to which [the complainant] was exposing *778 him” (supporting affirmation ¶ 36). At best, this contention would create a factual issue to be determined at trial. It does not, however, detract from the facial sufficiency of the accusatory instrument.
The critical issue arising in this case is whether an accusatory instrument alleging criminal contempt of an order of protection barring contact with the protected party “except as allowed by family court order” must contain a nonhearsay factual allegation that the contact alleged between the defendant and the complainant was not permitted by an order of the family court in effect on the date in question. This issue is likely to arise with considerable frequency in future cases throughout the state due to a recent modification of the standard form for orders of protection in family offense cases. The form orders, created by legislative mandate under CPL 530.12 (12) and promulgated pursuant to 22 NYCRR 200.8, contain standard fields with boxes which may be checked off by the issuing judge under the “stay away” and “refrain from communication” provisions. The fields state, “except for contact, communication or access permitted by a subsequent order issued by a family or supreme court in a custody, visitation or child abuse or neglect proceeding.”
The new form serves a valuable purpose. In the past, when a no-contact order of protection was issued, there was no efficient mechanism to allow for its modification after family court in a custody or child protective proceeding or supreme court in a matrimonial action made a determination that the best interests of a child or children would be served by allowing contact or communication otherwise forbidden by an extant criminal order of protection. This would require the “against” party to petition the issuing criminal court, on notice to the district attorney, for amendment or revocation of the order of protection pursuant to CPL 530.12 (6). Not only is this procedure time-consuming and cumbersome, but the issuing judge might well not have before him or her the same quantum of information (e.g. Family Ct Act § 1034 reports, forensic evaluations and the like) that would have been available to the court rendering the best interests determination. The current form simplifies procedures while also allowing for the best ultimate outcome.
If, as defendant suggests, an accusatory instrument alleging criminal contempt of such an order must contain a nonhearsay allegation that no subsequent order was issued permitting the *779 defendant’s conduct, an insurmountable barrier to the prosecution of such cases would exist. The police officer or prosecutor drafting the instrument would need access to family court and supreme court records in order to determine whether an order creating a “carve-out” to the criminal order of protection was issued and is in effect. This would be nearly impossible both legally and practically. Family court records are accorded privacy under 22 NYCRR 205.5. While certified copies of family court orders could be transmitted to a criminal court under section 205.5 (e), there is no statutory or regulatory provision that would authorize direct access to such orders by prosecutors or other members of law enforcement at the investigatory or charging stage of a criminal prosecution. Similarly, supreme court records in matrimonial cases are statutorily sealed under Domestic Relations Law § 235. Thus, access to the records of supreme and family courts by a prosecutor or police officer seeking a custody or visitation order creating a “carve-out” to a criminal order of protection would not be readily available.
Moreover, even if such records were legally accessible, this would not be the end of the analysis. While orders of protection are maintained in a centralized statewide computerized database as required under Executive Law § 221-a, no such centralized database exists for supreme court custody orders or divorce judgments. Can it reasonably be expected that a police officer tasked with drafting a misdemeanor complaint in a second degree criminal contempt action should be required to travel to the office of the county clerk in the county where the defendant has a pending or resolved divorce action (wherever that may be) in order to search the records for a judgment or order creating a “carve-out” to a criminal order of protection?
As to family court custody and visitation orders, these are uploaded to an internal database in the uniform case management system (UCMS) presently accessible only to authorized employees of the Unified Court System. Moreover, custody and visitation orders are not readily searchable statewide in the UCMS. Should the arresting officer be expected to call the family court — which is only open during normal business hours — to ask staff to search whether there is a custody order issued by the family court in the county of the defendant’s residence? And what if the custody order emanated from another county?
Of course, the task could morph from the Herculean to the Sisyphean if there actually is no subsequent order from any *780 supreme or family court. How could the accusatory instrument allege — by nonhearsay means — that no “carve-out” exists? Would the deponent on a misdemeanor information be required to aver that s/he has combed the records of the 62 counties of the state and has determined that there is no subsequent order from any supreme or family court? Clearly, such a requirement would be absurd.
It would certainly make more logical and legal sense to conclude that the existence of “carve-out” language in a criminal order of protection does not create an additional essential element to be alleged at the pleading stage of a prosecution for criminal contempt. Instead, inasmuch as the existence of a supreme or family court order granting a defendant rights in derogation of the plain language of a no-contact criminal order of protection would presumably be known to the defendant, it would be more reasonable to treat the existence of access rights via such a “carve-out” as a common-law defense to be raised by the defendant at trial. The prosecution would still bear the ultimate burden of proof; that burden would never shift (see Penal Law § 25.00 [1] [“When a ‘defense’ ... is raised at a trial, the people have the burden of disproving such defense beyond a reasonable doubt”]). The existence of the “carve-out,” however, would need to be raised by the defendant in order for the People to be put to their burden to prove either that no such “carve-out” exists or that the conduct of the defendant fell outside the scope of the “carve-out.”
“Ordinarily, the possibility of the defense would not appear until injected by the defendant” (People v Steele, 26 NY2d 526, 528 [1970], citing People v Sandgren, 302 NY 331 [1951]). As a practical matter, a defendant would bear “the initial burden of eliciting sufficient facts to raise a colorable claim” that his conduct was permitted by a “carve-out” created by a subsequent order (cf. People v Gelb, 76 NY2d 959, 961 [1990], citing People v Steele). “Sufficient facts” might include the name of the court that directed the “carve-out” so that the task of determining whether such a directive exists would be a fairly simple one.
Thus, for all the above reasons, the motion to dismiss for facial insufficiency is denied.
Motion to Make More Motions
This application is denied as academic. Should defendant need to apply for a further order beyond the scope of this *781 omnibus motion, the CPL provides avenues for relief without the need for a separate order granting permission to seek additional orders (see CPL 255.20 [3]).

 This matter originated in the Troy City Court, where defendant was arraigned prior to this case’s integration with related family court petitions in the Integrated Domestic Violence Part of Supreme Court, Rensselaer County. Accordingly, it is not entirely clear whether the defense was provided with a copy of the order of protection as a part of the accusatory instrument or whether it was obtained elsewhere. The People may wish to remove any doubt by making an application to amend under CPL 170.35 (1) (a) at the next appearance.